UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JORGE A. LEON, on behalf of himself and all others similarly situated,

Plaintiffs,

-against-

GAZIVODA REALTY CO., INC., MAY REALTY GROUP, INC., A & E TIEBOUT REALTY, LLC, ANTHONY S. GAZIVODA, Individually, and ELZA GAZIVODA, Individually,

Defendants.

---------------------------------------------------------------X

Dkt. No.: 18 Civ. 9723

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**Collective Action and Class Action Complaint**

Plaintiff Jorge A. Leon ("Plaintiff" or "Mr. Leon"), by and through his attorneys, Joseph & Norinsberg, LLC, alleges on behalf of himself and all others similarly situated, as follows:

## NATURE OF CASE

1. Plaintiff brings this action on behalf of himself and all others similarly situated for Defendants' systemic and continuous violations of: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq*.; (ii) the overtime provisions of the New York Labor Law ("NYLL") and Comp. Codes R. & Regs Tit. 12, § 142-2.2 ("NYCCRR"); (iii) the requirement that employers furnish employees with a written statement at the time of hiring, and annually thereafter, containing specific categories of information under the NYLL § 195(1), codified as the New York Wage Theft Prevention Act (the "NYWTPA"); (iv) the requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL § 195(3); and (v) any other cause(s) of action that can be inferred from the facts set forth herein.

**PRELIMINARY STATEMENT**

2. Plaintiff was a building superintendent who worked for Defendants from 2010 until September 2013, and again, from June 2017 until May 2018. Throughout the course of his employment, Plaintiff regularly worked as many as seven days a week, and well over 40 hours each week -- including the requirement that he be on-call 24 hours a day, seven days a week to deal with any issues in his assigned building -- without receiving lawful wages for each hour he worked, let alone the statutorily-mandated rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

3. Additionally, during the time of his employment with Defendants, Plaintiff was routinely required to spend additional time each day doing handyman work for individual apartments. Thus, Plaintiff was performing the duties of a superintendent *and* handyman for a building with 72 units; nonetheless, Defendants only paid him for 30 hours each week, regardless of how many hours he actually worked.

4. By demanding that Plaintiff assume the role of superintendent and handyman, Defendants have saved themselves tens of thousands of dollars at the expense of Plaintiff. Indeed, "handyman services" – i.e., construction, erection, alteration, repair, demolition, plumbing, electrical work, painting, fumigation, lead abatement, or other similar work – when not paired with the title "superintendent," are extremely costly.

5. Upon information and belief, the corporate and individual Defendants listed herein operate as an enterprise which owns and/or manages numerous residential apartment buildings throughout the City of New York. Furthermore, they employ other similarly situated superintendents, who are likewise denied lawful wages for their overtime hours, in violation of the FLSA and NYLL.

6. Accordingly, Plaintiff brings this action on behalf of himself and all others similarly situated, both current and former employees, pursuant to the Fair Labor Standards Act ("FLSA"), and specifically the collective action provision of the FLSA. Plaintiff also brings this action on behalf of himself and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of the NYLL.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

8. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants reside within this judicial district.

## DEMAND FOR A JURY TRIAL

10. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

11. Plaintiff Jorge Leon is an individual who, at all times relevant to this Complaint, was a resident of the City and State of New York.

12. Plaintiff was employed by Defendants as a building superintendent and handyman from 2010 until September 2013, and again, from June 2017 until May 2018.

13. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 USC § 203(e), and NYLL § 190(2).

***Gazivoda Realty, Co., Inc.***

14. At all times relevant to this action, Defendant Gazivoda Realty, Co., Inc. ("Gazivoda Realty"), was and is, a domestic business corporation with its principal place of business located at 3200 Cruger Avenue, Suite 201, Bronx, New York.

15. At all times relevant to this action, Gazivoda Realty was and is engaged in interstate commerce, as defined by the FLSA, and Gazidova Realty's qualifying annual business exceeds $500,000.00, the combination of which subjects Gazivoda Realty to the FLSA's overtime requirements.

16. Upon information and belief, Anthony Gazivoda and Elza Gazivoda, the individual Defendants listed herein, were and are agents of Gazivoda Realty.

17. During the times referenced herein, Plaintiff worked as a superintendent and handyman for a residential building owned and/or managed by Gazivoda Realty.

***May Realty Group Inc.***

18. At all times relevant to this action, Defendant May Realty Group, Inc. ("May Realty"), was and is, a domestic business corporation with its principal place of business located at 2025 Continental Avenue, Office Suite 1st Floor, Bronx, New York, and a mailing address located at P.O. Box 117, Woodland Station, Bronx, New York.

19. Upon information and belief, May Realty is the successor in interest to Gazidova Realty.

20. At all times relevant to this action, May Realty was and is engaged in interstate commerce, as defined by the FLSA, and this Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects May Realty to the FLSA's overtime requirements.

21. Upon information and belief, Anthony Gazivoda and Elza Gazivoda, the individual Defendants listed herein, were and are agents of May Realty.

22. Plaintiff worked as a superintendent and handyman for a residential building owned and/or managed by May Realty, and his most recent paystubs were issued by May Realty.

***A & E Tiebout Realty, LLC.***

23. At all times relevant to this action, Defendant A & E Tiebout Realty, LLC ("A & E"), was and is a domestic limited liability company, which shares an address with May Realty, at P.O. Box 117, Woodland Station, Bronx, New York.

24. At all times relevant to this action, A & E was and is engaged in interstate commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects A & E to the FLSA's overtime requirements.

25. During the times referenced herein, Plaintiff worked as a superintendent and handyman in the building located at 2200 Tiebout Ave, and he was required to submit work orders on A & E letterhead detailing repairs and renovations.

***Elza Gazivoda***

26. At all times hereinafter mentioned, Defendant Elza Gazivoda ("Elza") was and is an Owner, Chief Operating Officer, Property Manager, Supervisor, and/or member of the three corporate Defendants listed herein – Gazivoda Realty, May Realty, and A&E.

27. At all relevant times herein, Elza actively participated in the day-to-day operations of the corporate Defendants listed herein, Specifically, Elza directly managed the building assigned to Plaintiff and as a result had direct contact with Plaintiff.

28. Elza was an "employer" pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is, therefore, jointly and severally liable with the corporate Defendants listed herein.

29. Upon information and belief, Elza owns and/or operates numerous residential buildings in the City of New York, including Plaintiff's building.

***Anthony S. Gazivoda***

30. Upon information and belief, Defendant Anthony S. Gazivoda ("Tony"), Elza's brother, was and is an Owner, Chief Operating Officer, Property Manager, Supervisor, and/or of the three corporate Defendants listed herein – Gazivoda Realty, May Realty, and A&E.

31. At all relevant times herein, Tony actively participated in the day-to-day operations of the corporate Defendants listed herein, Specifically, Tony directly managed Gazivoda Realty, and as a result had direct contact with Plaintiff.

32. Tony was an "employer" pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is, therefore, jointly and severally liable with the corporate Defendants listed herein.

33. Upon information and belief, Tony owns and/or operates numerous residential buildings in the City of New York, including Plaintiff's building.

34. Collectively, the above-referenced corporate defendants and individual defendants are hereinafter referred to collectively as "Defendants."

35. At all times hereinafter mentioned, Defendants exercised control over the terms and conditions of Plaintiff's employment, in that Defendants had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiff herein; and (v) otherwise affect the quality of the employees' work conditions and employment. Accordingly, Defendants were the "employer(s)" of Plaintiff within the meaning of the FLSA, 29 USC § 203(d), and NYLL § 190(3).

**COLLECTIVE ACTION ALLEGATIONS**

36. Plaintiff brings his action on his own behalf and on behalf of a class of persons under Rule 216(b) of the FLSA, defined to include: all superintendents and handymen, employed by Defendants during the relevant statutory period, who did not receive: (i) lawful wages for each hour worked; and/or (ii) wages at premium rates for hours worked in excess of forty (40) hours per week, in violation of the FLSA (hereinafter, the "FLSA Collective Action").

37. Defendants are liable under the FLSA for, *inter alia*, failing to pay wages for each hour worked and/or wages at premium rates for overtime hours worked. There are numerous similarly situated current and former employees of Defendants, who have been similarly underpaid in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

38. The persons in the FLSA Collective Action identified above, including both current and former employees over the relevant period, is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief, there are at least 20 FLSA members, and there could be significantly more.

39. The precise number of FLSA collective action members should be readily available from a review of the Defendants' personnel, scheduling, time and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

**NEW YORK CLASS ACTION ALLEGATIONS**

40. Plaintiff brings his action on his own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), defined to include: all superintendents and handymen, employed by Defendants during the relevant statutory period, who did not receive: (i) lawful wages for each hour worked; and/or (ii) wages at premium rates for hours worked in excess of forty (40) hours per week, in violation of the NYLL during the statutory period (hereinafter, the "New York Class").

41. *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable. Plaintiff reasonably estimates that there are at least 30 Class members who reside and work in New York. The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

42. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants failed to pay Plaintiff and the New York Class lawful wages for each hour worked;

b. Whether Defendants failed to pay Plaintiff and the New York Class the statutorily-mandated rate of pay of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week;

    c. Whether Defendants violated the NYWTPA by failing to provide Plaintiff and the New York Class with a written statement upon hiring, and annually, as required by NYLL § 195(1);

    d. Whether Defendants violated the NYWTPA by failing to provide Plaintiff and the New York Class with sufficiently detailed wage statements with each payment, as required by NYLL § 195(3);

    e. Whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL; and

    f. Whether Defendants' violations were willful.

43. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, and course of conduct as all other Rule 23 Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Rule 23 Class members, as detailed above.

44. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 York Class. Furthermore, Plaintiff has retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions.

45. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, *inter alia*, it is economically unfeasible for the Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

46. The case will be manageable as a class action because Defendants should have payroll systems that will allow the wage-and-hour damages to be determined with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

47. Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## INDIVIDUAL ALLEGATIONS

***Defendants Willfully Fail to Pay Mr. Leon Lawful Wages for all Hours Worked, and Fail to Pay Him at the Mandatory Statutory Rate for all Overtime Hours*.**

48. Plaintiff Jorge Leon worked for Defendants as a superintendent and handyman from 2010 until September 2013, and again, from June 2017 until May 2018, for a residential building owned and/or managed by Defendants located at 2200 Tiebout Avenue, Bronx, New York, which had 72 units.

49. While employed by Defendants, Mr. Leon lived in the basement apartment of 2200 Tiebout Avenue, Bronx, New York. He lived in the basement for the sole purpose of being available to provide services on a twenty-four (24) hour basis, and would not have lived there but for the fact that he was required to be on-site at all times to meet the requirements of his job.

50. As a superintendent and handyman, Mr. Leon's duties included inter alia: a) making minor apartment repairs and renovations including painting and roofing; b) fumigating the apartments; c) minor electrical work; d) maintaining the building's boilers; e) checking hallways for cleanliness and maintenance issues; f) minor tiling; g) minor plumbing; h) minor carpentry work; i) cleaning inside and outside the building; and j) addressing tenants' concerns.

51. During his employment with Defendants, Mr. Leon worked in excess of forty (40) hours per week, working on average seventy (70) hours per week in total – which equals thirty-(30) hours per week of overtime work.

52. Despite the foregoing schedule, Defendants deliberately underpaid Mr. Leon, who merely received compensation for thirty (30) hours per week, regardless of how many hours he actually worked.

53. Additionally, Defendants regularly assigned Mr. Leon with numerous renovation assignments, which were a mandatory part of his employment and often involved major immediate repairs for tenants, or the rehabilitation of apartments before new tenants moved in. These projects were recorded on "work orders" for Defendants' administrative purposes; however, the hours were never reflected in Mr. Leon's actual paycheck. He was paid for 30 hours each week, regardless of how many projects he had completed that week.

54. In a willful scheme to camouflage their unlawful practices, on a weekly basis, as a pre-requisite to releasing Mr. Leon's paycheck, Defendants ordered Plaintiff to sign and submit inaccurate timesheets with blacked-out weekend time entries, falsely representing that he had worked thirty (30) hours per week. Mr. Leon felt compelled to sign and submit the inaccurate timesheets, believing he would lose his jobs if he refused to comply with the Defendants' orders.

55. At times when Mr. Leon was assigned large time-sensitive renovations, Defendants would assign other superintendents and handymen whom they employed to assist Mr. Leon. As a result of his interactions with other superintendents and handymen, Mr. Leon learned that Defendants owned and/or managed various residential properties, which employed superintendents, and that they too, were victims of the same company-wide unlawful wage policy. Like Plaintiff, these individuals were also denied wages at the statutorily-mandated rate of one-and-one-half times the regular rate of pay for each hour they worked in excess of forty (40) hours per week.

56. Mr. Leon frequently complained to Elza and Tony as to Defendants' unlawful compensation practices and requested back-pay. He also requested that Defendants employ a porter so that he would have some assistance. In response, Elza and Tony would promise, falsely that, "we will get you more help," but they never did. Instead, they continued to demand that Mr.

Leon work long hours each week, and continued to pay him for only 30 hours each week, in violation of the FLSA and NYLL.

57. Defendants engaged in other FLSA and NYLL violations as well. Notably, at all relevant times, Defendants failed to keep complete and/or accurate records of the hours worked by Plaintiff. Specifically, Plaintiff's paystubs reflect 30 hours of work only, although it is uncontroverted that Mr. Leon worked many more than 30 hours each week of his employment.

58. Additionally, at all relevant times, Defendants failed to post and/or keep posted a notice explaining employees' rights under the FLSA, in violation of 29 C.F.R. § 516.4.

59. Upon information and belief, Defendants' unlawful conduct, as described herein, is pursuant to a policy or practice of attempting to minimize labor costs by violating the FLSA and NYLL.

60. Defendants' unlawful conduct has been widespread, repeated, consistent, and willful.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
**(Unpaid Overtime under the FLSA, 29 U.S.C. §§ 201 – 219)**

61. Plaintiff, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62. Defendants violated the rights of Plaintiff and all similarly situated Class Members, by failing to compensate them lawful wages for each hour they worked and/or wages at the statutorily-mandated rate of one-and-one-half times the regular rate of pay for each hour they worked in excess of forty (40) hours per week in violation of the FLSA, 29 U.S.C. § 207(a)(l).

63. Defendants' failure to pay Plaintiff and all similarly situated Class Members lawful wages for each hour they worked and/or the statutorily-mandated rate of one-and-one-half times

the regular rate of pay for each hour they worked in excess of forty (40) hours per week was willful within the meaning of the FLSA, 29 U.S.C. § 255.

64. Defendants are liable to Plaintiff and all similarly situated Class Members for unpaid lawful wages and/or unpaid overtime hours, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
**(Unpaid Overtime under the NYLL § 160 et seq. and the NYCCRR)**

65. Plaintiff, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66. NYLL § 160 and 12 NYCCRR 142-2.2 require employers to compensate their employees at a rate not less than one-and-one-half times their regular rates of pay for any hours worked in excess of forty per week.

67. Defendants violated the rights of Plaintiff and all similarly situated Class Members, by failing to compensate them with lawful wages for each hour they worked and/or wages at premium rates for each overtime hour they worked, in violation of the NYLL and NYCCRR.

68. These practices were willful and lasted for the duration of all relevant time periods.

69. By reason of the foregoing, Defendants are liable to Plaintiff and all similarly situated Class Members for their unpaid lawful wages including overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS**
**(Failure to Provide Annual Notices in Violation of the NYLL § 195(1))**

70. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71. Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

72. Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with any kind of annual notice whatsoever, let alone an annual notice meeting the requirements of NYLL § 195(1)(a). Specifically, Plaintiff was not notified of his entitlement to overtime wages at the premium rate, although he was routinely required to work overtime hours.

73. NYLL § 198(1)(b) provides that any employee not provided such notice may collect damages of $50.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees, as well as appropriate injunctive and/or declaratory relief.

74. During the course of Plaintiff's and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate annual notices as required by New York law.

75. Based on the foregoing, Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Failure to Provide Wage Statements in Violation of the NYLL § 195(3))**

76. Plaintiff, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

77. Pursuant to NYLL § 195(3), every employer is required to:

> Furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

78. Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with wage statements meeting the requirements set forth above. Specifically, Plaintiff's paystubs represented 30 work hours per week, although this was plainly false.

79. NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees, as well as appropriate injunctive and/or declaratory relief.

80. During the course of Plaintiff's and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

81. The paystubs provided to Plaintiff and Class Members were woefully inadequate, and did not, and cannot, satisfy the requirements of NYLL § 195(3). Notably, Defendants routinely underreported the number of hours Plaintiff and Class Members worked and failed to compensate them lawful wages for each hour worked and/or wages at premium rates for overtime hours worked.

82. Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b. Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

c. Designating Plaintiff Jorge A. Leon as Class Representative;

d. Designating Joseph & Norinsberg, LLC as Class Counsel;

e. Issuing a judgment declaring that Defendants willfully violated the FLSA;

f. Issuing a judgment declaring that Defendants willfully violated the NYLL;

g. Granting judgment in favor of Plaintiff, FLSA Collective Action members, and the New York Class, and against Defendants, and awarding the amount of unpaid wages for each hour worked;

h. Granting judgment in favor of Plaintiff, FLSA Collective Action members, and the New York Class, and against Defendants, and awarding the amount of unpaid overtime wages calculated at the rate of one-and-one-half times their regular rate of pay, multiplied by all hours worked in excess of the prescribed number of hours per week;

i. Awarding liquidated damages to Plaintiff, FLSA Plaintiffs, and the New York Class, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Class Members;

j. Awarding all other available compensatory damages to Plaintiff, FLSA Collective Action members, and the New York Class, including, *inter alia*, all unpaid wages, lost interest owed, and liquidated and double damages by Defendants under the FLSA, NYLL, and NYWPTA;

k. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

l. Awarding pre-judgment and post-judgment interest to Plaintiffs on these damages; and

m. Awarding such further relief as this court deems just and proper.

Dated: New York, New York
October 23, 2018

**JOSEPH & NORINSBERG, LLC**

By: ______________________________

Chaya M. Gourarie, Esq.
225 Broadway, Suite 2700
New York, New York 10007
Tel: (212) 227-5700
Fax: (212) 406-6890
*Attorneys for Plaintiff and Putative Class*