# JOSEPH & NORINSBERG, LLC

225 Broadway Suite 2700
New York, NY 10007
Telephone (212) 227-5700
Fax (212) 406-6890
_____
www.employeejustice.com

August 2, 2019

**VIA ECF**
Hon. Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    ***Leon v. Gazivoda Realty Co., Inc. et al.*,**
              *No. :18-cv-09723-AT*

Dear Judge Torres:

    We represent Plaintiff Jorge Leon ("Plaintiff") in the above-referenced employment matter, on behalf of himself and all others similarly situated. We write now, on behalf of all parties, to respectfully seek judicial approval of the Settlement Agreement, attached hereto as Exhibits A. Additionally, the parties respectfully request that the executed voluntary dismissal annexed hereto as Exhibit B be "So-Ordered" by the Court.

    **I.**    **PROCEDURAL HISTORY**

    Mr. Leon commenced this action on October 23, 2018, on behalf of himself and all others similarly situated, against the Defendants for unpaid overtime wages and related claims, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and New York Labor Law ("NYLL").

    In the complaint, Plaintiff alleged that he worked for Gazivoda Realty Co., INC. ("Gazivoda"), as a superintendent and handyman from 2010 until September 2013, at the building located at 2200 Tiebout Avenue, Bronx, New York, which had 72 units. Subsequently, Plaintiff worked elsewhere for several years, and then resumed working as a residential superintendent for Defendants – who were then operating under the name May Realty Group, Inc. ("May Realty") – at the same building, from approximately June 2017 until May 2018.

    Plaintiff alleged further that he routinely worked in excess of 40 hours per week (up to seventy hours per week). Nonetheless, Defendants only paid him for 30 hours each week, regardless of how many hours he actually worked.

    The Defendants filed an answer on December 6, 2018, denying all material allegations.

The Hon. Analisa Torres, U.S.D.J.
August 2, 2019
Page 2

The parties engaged in initial discovery, and exchanged document demands and interrogatories.

Subsequently, in compliance with the Court's Pilot Program for FLSA cases, a court-ordered mediation session was held on May 5, 2019. The parties negotiated in good faith but were unable to reach a resolution. Defendants made two essential arguments. First, they argued that Plaintiff was not entitled to damages whatsoever for the overtime hours he worked from 2010-2013 (the Gazivoda period) since New York law governed that period, and therefore the rates set forth in the New York's Building Code applied.[1] Second, with respect to the FLSA period (the May Realty period), Defendants claimed that Plaintiff has not worked the hours he alleged to have worked, and therefore, was not entitled to *any* damages. Defendants produced documents which, if accepted as true, demonstrated that Plaintiff worked far less than the hours he claimed to have worked. The Plaintiff, in turn, asserted that the produced documents were inaccurate, and did not reflect the number of hours he *actually* worked. He stated that he could produce witnesses who would corroborate that he had indeed worked more than 40 hours each and every week that he had worked for Defendants.

Thereafter, counsel for both parties continued to negotiate on behalf of their clients. Plaintiff's counsel researched the matter further, and confirmed that as a matter of law, the Gazivoda Period (2010-2013) was governed by NY's Building Code, and therefore, his payment for those years, as demonstrated by the produced paystubs, was lawful. Thus, Plaintiff could only seek damages for the 12 months that he worked for May Realty.

After several weeks of negotiating back and forth the parties reached an agreement in principle, and agreed to settle the matter for Eleven Thousand Two Hundred Fifty Dollars ($11,250.00). The parties' complete settlement agreement is now annexed hereto as Exhibits A.

## THE SETTLEMENT AGREEMENT

Subject to the Court's approval, the Settlement Agreement reached by the parties obligates the Defendants to pay Plaintiff the total sum of Eleven Thousand Two Hundred Fifty Dollars ($11,250.00) to resolve the case. (See Exhibits A at ¶ 1).

As per the terms of the Settlement Agreement, after attorneys' fees and expenses, Plaintiff will receive $6,986.66 of the total settlement amount, which equals 0.66% of the total settlement sum, to be paid in two settlement checks, within 14 days of Court approval the subject Settlement Agreement. (Id.).

In exchange for the settlement payments, Plaintiff would agree to release all claims against the Defendants. The Settlement Agreement also contains a mutual non-disparagement provision, and a neutral reference provision. (Exhibits A at ¶¶ 7-10).

---

[1] The Building Code establishes a reduced hourly rate for a residential superintendent (12 N.Y.C.R.R. §141-1.2), and eliminates overtimes wages for same. (12 N.Y.C.R.R. §141-1.4).

The Hon. Analisa Torres, U.S.D.J.
August 2, 2019
Page 3

## COSTS AND ATTORNEY'S FEES

The settlement agreement provides for attorneys' fees in the amount of 0.33% of the settlement amount, which after adding back $770.00 in costs, equals Four Thousand, Two Hundred and Sixty-Three Dollars and Thirty-Four Cents ($4,263.34). (See Exhibits A ¶1). A disbursement log showing Plaintiff's costs in this action, which amount to $770.00, is annexed hereto as Exhibit C.

Since the filing of the case in October 23, 2018, Plaintiff's counsel has used its considerable experience in litigating wage and hour cases to analyze the risks in this case, and to achieve a favorable result for the Plaintiff.

Plaintiff's counsel has worked without compensation of any kind to date, and our fee is wholly contingent upon the result achieved. Under such circumstances, Courts routinely award attorneys' fees equaling one-third of the settlement amount. See e.g., Howard v. Don Coleman Advertising Inc., 2017 WL 773695, at *2 (S.D.N.Y., 2017) (Cott, J.) (approving attorneys' fees of one-third of the settlement amount, plus costs); Williams v. Magic Management, LLC, 2017 WL 4861990, at *3 (S.D.N.Y., 2017) (same); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiffs' retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit.").

Furthermore, in compliance with this Court's June 19, 2019 Order, [Dkt. No. 35], attached hereto please find a breakdown of the hours worked by Chaya M. Gourarie, Esq., a senior litigation associate with seven years of experience, in connection with this case, demonstrating that she worked 45.52 hours. (Exhibit D). Additionally, attached hereto, please find a breakdown of the hours worked by the firm's senior paralegal, Ana Guevara, demonstrating that she worked 13.5 hours. (Exhibit E).

## THE SETTLEMENT IS FAIR AND REASONABLE

The parties' agreement must be "fair and reasonable." Flores v. Food Express Rego Park, Inc., No. 15-CV-1410 (KAM)(SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016) (citing Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).  Generally, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."  In re Penthouse Executive Club Compensation Litig., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether to approve a settlement agreement, the ultimate question is "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Wolinsky, 900 F. Supp. 2d at 335.

Here, there is no question that the Settlement Agreement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-

The Hon. Analisa Torres, U.S.D.J.
August 2, 2019
Page 4

length negotiations over the course of several months, and then further negotiations at a private mediation. The parties are represented by counsel who are highly experienced in wage and hour law, and who duly counseled their respective clients on the benefits and risks of continued litigation. In fact, the parties settled this case only after participating in a court-ordered mediation, and hearing the mediator's objective analysis of each party's position. Thus, this settlement is devoid of any fraud or collusion.

The proposed Settlement Agreement resolves *bona fide* disputes and reflects a reasonable compromise over sharply contested issues that led the parties to resolve this matter. Had the matter proceeded to summary judgment and/or trial, Defendants risked being exposed to greater damages, as Plaintiff might have demonstrated that he was entitled to greater damages.

Plaintiff, however, also faced considerable risks in proceeding forward with the litigation, as Defendants may have demonstrated that Plaintiff's reasonable recollections of hours worked were inaccurate. Defendants presented time sheets, which if deemed credible, could have led to Plaintiff receiving no damages whatsoever. Thus, for both parties, continuing through trial would be costly and would further defer closure in this litigation. Therefore, the settlement represents a reasonable compromise of the disputes in this matter. The settlement eliminates these risks and ensures that Plaintiff will receive fair and reasonable compensation in this matter.

In sum, based on the litigation and collection risks discussed above, the settlement is advantageous to all parties and will enable the parties to avoid the burdens and expenses of ongoing litigation.

## **CONCLUSION**

For the reasons set forth above, the parties respectfully request that the Court approve the settlement as fair and reasonable. Additionally, the parties respectfully request that the executed voluntary dismissal annexed hereto as Exhibit B be "So-Ordered" by the Court.

We thank the Court for its consideration of this request.

Respectfully Submitted,

JOSEPH AND NORINSBERG, LLC

By: _____
Chaya M. Gourarie, Esq.